## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ALEHEGN MEHARI**
**7705 Riverdale Road # 102**
**New Carrollton MD 20784**

                              **Plaintiff**

**v.**

**THE DISTRICT OF COLUMBIA**
**Mayor Muriel Bowser**
**John A. Wilson Building**
**1350 Pennsylvania Avenue NW**
**Washington, DC 20004**

**Serve:**

        **Office of the Attorney General**
        **Claims Unit, 6th Floor**
        **441 4th Street NW**
        **Washington, DC 20001**
**and**

**NICO ALFREDO SCOTT**              **Case Number**
**3136 Sedgewick Drive**            **1:16-cv-1889**
**Waldorf MD 20603**

**and**

**BLAKE EDWARD JOHNSON**
**903 N Wayne Street Apt. 305**
**Arlington VA 22201**

**and**

**BRYAN FRANCIS CHRISTIAN**
**15410 Jodphur Drive Apt. S736**
**Bowie MD 20721**

**and**

**Unknown officers of the Metropolitan**
**Police Department**
                              **Defendants**

**COMPLAINT**

This is a complaint for monetary damages for the unlawful seizure of the Plaintiff's person and property, injury to the Plaintiff's person and reputation, deprivation of civil rights under color of state authority and for such injuries caused by the Defendants and other yet unidentified persons by a conspiracy to deprive the Plaintiff of his civil rights.

**STATEMENT REGARDING D.C. CODE § 12-309**

On January 4, 2016, the undersigned attorney did cause to be mailed via United States Postal Service Priority Mail, postage prepaid and electronic delivery notification requested, to the District of Columbia Office of Attorney General and the Office of the Mayor, statutorily sufficient notice of all claims herein, including the dates and locations of such wrongful conduct to the extent presently known to the Plaintiff.  On July 5, 2016 the District of Columbia acknowledged receipt thereof but denied any wrongdoing.

**JURISDICTION AND PARTIES**

1.      The Plaintiff offers causes of action arising under 42 U.S.C. § 1983 for being subjected to a deprivation of his rights, privileges, and/or immunities secured by the Constitution and applicable law, by persons acting under color of the authority of the government of the District of Columbia.

2.      The Plaintiff further offers causes of action arising under 42 U.S.C. § 1985 for injuries resulting from two or more persons conspiring to impede, hinder, obstruct, defeat the due course of justice with intent to deny the Plaintiff the equal

protection of the laws.  Such Defendants named herein have so conspired, and acted affirmatively in furtherance of the object of such conspiracy.

3.      Under 28 U.S.C. § 1331, the United States District Court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States, including 42 U.S.C. §§ 1983 and 1985.

4.      The Plaintiff further asks this Court to declare his rights and other legal relations.

5.      Under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et. seq.*, the United States District Court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

6.      The Plaintiff offers additional causes of action arising under common law, including Abuse of Process, False Arrest and Malicious Prosecution.

7.      Under 28 U.S.C. § 1367, the United States District Court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8.      The Plaintiff's common law claims are so related to the Federal law claims that they form part of the same case or controversy.

9.      The Plaintiff asserts that certain of these common law claims are necessarily "federal" common law claims required to fill minor gaps in existing federal law.

10.     "The inevitable incompleteness presented by all legislation means that interstitial federal lawmaking is a basic responsibility of the federal courts." *United States v. Little Lake Misere Land Co., Inc.*, 412 U.S. 580, 593 (1973).  The United States District Court therefore has 28 U.S.C. § 1331 federal question jurisdiction for such federal common law questions herein.

11.     Plaintiff Mehari is a natural person and a resident of the State of Maryland.

12.     The District of Columbia is a municipal corporation capable of being sued.

13.     Defendants Nico Scott, Blake Johnson, Bryan Christian and the other yet unidentified Defendants are sworn officers of the District of Columbia Metropolitan Police Department sued in their respective individual capacities.

14.     All of the events complained of herein occurred within the District of Columbia.

**RELEVANT FACTS**

15.     Following events in Ferguson, Missouri in August 2014 and Baltimore, Maryland in April 2015, major cities in the United States including the District of Columbia experienced a significant upswing in violent crime.

16.     During this time period, police agencies in these cities, including the District of Columbia Metropolitan Police Department, were criticized in the media for a lack of enforcement action to meet the increase in violent crime.

17.     At the same time, police officers within these agencies refused to engage in what is termed "proactive" policing, due to public scrutiny, threats of violence, and a perceived lack of support from governmental officials.

18.     During the summer of 2015, police agencies such as the District of Columbia Metropolitan Police Department were under intense pressure to address this violent crime through an increase in police activities.

19.     At the same time, these agencies were also under pressure from the media and advocacy groups to address and reverse a claimed increase in police violence towards black African Americans.

20.     As a result of these seemingly conflicting demands upon police, certain elements of the Metropolitan Police Department such as the Narcotics Special Investigation Division's Prostitution Unit, also known as the Human Trafficking Unit, intentionally targeted enforcement of public order offenses against groups of immigrants with limited English speaking skills.

21.     In conjunction with this enforcement effort, members of the United States Attorney's Office and the Superior Court compelled arrestees to rapidly resolve these charges through diversion programs with strong incentives for defendants to plead guilty without trial.

22.     In targeting immigrants with limited communication skills at perceived risk of losing immigration status for criminal convictions, the Defendants were able to generate a high rate of arrests, quickly closed with dispositions favorable to the government, with limited danger of violent police encounters as criticized in Ferguson and Baltimore.

23.     Such immigrants were intentionally targeted and victimized with falsified arrests followed by burdensome demands for participation in diversion and other deprivations of their liberties as their cases progressed through the District of Columbia criminal justice system.

24.     Mehari is an immigrant from Ethiopia.

25.     Mehari is not a native speaker of English.

26.     Mehari is licensed by the District of Columbia Taxicab Commission as a taxicab driver.

27.     The issuance of a taxicab driver's license by the District of Columbia is conditioned upon, *inter alia*, a showing of good moral character and not having served prison time for any number of crimes, including any sex offense.

28.     Prior to September 24, 2015, Mehari had no criminal record of any kind.

29.     On the early morning of September 24, 2015, Mehari had completed his work day as a taxicab driver and was returning home to Maryland.

30.     On that morning, Mehari pulled his marked taxicab into the gas station at 1765 New York Avenue, NE.

31.     Mehari alighted from his taxicab and entered the store to purchase a lottery ticket.

32.     Unknown to Mehari, a woman standing in the parking lot was an undercover officer of the Metropolitan Police Department Narcotics Special Investigation Division's Prostitution Unit.

33.     Upon Mehari's return to his taxicab, the undercover officer walked up to and in front of Mehari's taxicab.

34.     She then approached the window and attempted to speak to Mehari.

35.     Mehari, confused and concerned by her approach, rolled the window only partially down and spoke to her.

36.     Mehari became further confused by the unfamiliar lingo used by the undercover officer as she spoke to him.

37.     Mehari attempted to drive away from the undercover officer.

38.     The undercover officer leaned into the partially open window to prevent his departure.

39.     Once Mehari understood that she was soliciting him for sex, he explained that he was married and again attempted to leave.

40.     The undercover officer persisted in soliciting Mehari until he pulled away in his taxicab and proceeded back towards New York Avenue.

41.     Upon his departure, the undercover officer gave her signal to arrest Mehari to Defendants Scott and Johnson, and other officers hiding at a distance from the gas station.

42.     As Mehari's taxicab reached the street, he was cut off by two marked police cars with emergency lights flashing.

43.     Several unidentified uniformed officers with firearms displayed rushed Mehari's taxicab and removed him from the vehicle.

44.     Despite such officers having personally witnessed Mehari refusing the advances of the undercover officer and driving away from her a significant distance to the street, these officers placed Mehari under arrest for Sexual Solicitation.

45.     Despite such officers having personally witnessed Mehari refusing the advances of the undercover officer and driving away from her a significant distance to the street, these officers fabricated a false police report describing that Mehari had accepted the advances of the undercover officer and somehow solicited her for prostitution.

46.     Mehari was held in custody against his will for several hours.

47.     Mehari's property and personal possessions were seized from him.

48.     On or about October 7, 2015, Defendants Scott, Johnson and Christian, and other yet unidentified officer(s) of the District of Columbia Metropolitan Police Department Narcotics Special Investigation Division's Prostitution Unit made a sworn complaint to the United States Attorney's Office to initiate a criminal proceeding against Mehari.

49.     Such officer(s) knew or should have known that the allegations against Mehari were fictitious.

50.     Mehari had to appear in court on at least four occasions.

51.     Mehari was subjected to burdensome limitations on his freedom as a condition of his pretrial release including drug testing and an obligation, under threat of arrest, to appear at the Pretrial Services Agency.

52.     Mehari was offered diversion, a form of probation before sentencing, by the United States Attorney.

53.     Mehari refused diversion and demanded a trial.

54.     Mehari's prosecution was abandoned on January 4, 2016, the scheduled date of his trial.

55.     Mehari was subsequently denied an apartment application after the rental agency discovered his recent prostitution related arrest.

56.     Mehari suffered substantial humiliation and emotional distress as a result of his false arrest and pending criminal case.

57.     Mehari incurred substantial expense in defending against the false charge.

58.     A subsequent Freedom of Information Act request provided no information regarding the identities of the officers involved.


## COUNT I
### Fifth Amendment Deprivation of Property Interest

59.     Paragraphs 1 through 58 are incorporated by reference as if fully set forth and repeated herein.

60.     The Plaintiff's property was seized without lawful cause.

61.     The Plaintiff's property was seized for an unlawful purpose.

62.     The Plaintiff's property was intentionally damaged or destroyed.

63.     The Plaintiff was deprived of such property without due process of law.

64.     The Plaintiff has been directly and proximately injured by the deprivation.

65.     Such unlawful conduct was initiated, facilitated and condoned by persons who are policymakers for the District of Columbia government.

66.     Such unlawful conduct amounted to, and arose from, an official policy and custom of the District of Columbia government intended to target immigrants who were particulary vulnerable to criminal proceedings and less likely to be able to defend themselves.

67.     Such unlawful conduct was physically manifested by Defendants Scott, Johnson, Christian and yet unidentified officers of the Metropolitan Police Department Narcotics Special Investigation Division's Prostitution Unit, in furtherance of the official policy and custom of the District of Columbia.

**COUNT II**
**Fourth Amendment Deprivation of Liberty and Property Interest**

68.     Paragraphs 1 through 67 are incorporated by reference as if fully set forth and repeated herein.

69.     The Plaintiff was seized and his person and vehicle searched by Defendants Scott, Johnson, Christian and yet unidentified officers of the Metropolitan Police Department Narcotics Special Investigation Division's Prostitution Unit acting under the color of state authority.

70.     These officers acted without information which would constitute probable cause that the Plaintiff committed a crime.

71.     The Plaintiff has been directly, proximately and consequently injured by these officers' illegal conduct.

72.     Such unlawful conduct was initiated, facilitated and condoned by persons who are policymakers for the District of Columbia government.

73.     Such unlawful conduct amounted to, and arose from, an official policy and custom of the District of Columbia government intended to target immigrants who were particuarly vulnerable to criminal proceedings and less likely to be able to defend themselves.

74.     Such unlawful conduct was physically manifested by Defendants Scott, Johnson, Christian and yet unidentified officers of the Metropolitan Police Department Narcotics Special Investigation Division's Prostitution Unit in furtherance of the official policy and custom of the District of Columbia.

## COUNT III

### Deprivation of Equal Protection of the Law

75.     Paragraphs 1 through 74 are incorporated by reference as if fully set forth and repeated herein.

76.     The Defendants targeted immigrants with limited English speaking skills for arrest as to avoid successful or prolonged defenses to false allegations of engaging in prostitution.

77.     By specifically targeting the Plaintiff as an immigrant with limited English speaking skills, he has been deprived of equal protection of the laws.

78.     The Plaintiff has been directly and proximately injured as a result of the Defendants' unlawful conduct.

### COUNT IV
### Negligent Supervision/Negligent Retention
### as to the District of Columbia

79.     Paragraphs 1 through 78 are incorporated by reference as if fully set forth and repeated herein.

80.     Supervisors and officials of the Metropolitan Police Department have condoned, and indeed encouraged the type of false arrest and false prosecution the Plaintiff has suffered herein.

81.     Such conduct by the District of Columbia demonstrates a deliberate indifference to the Plaintiff's constitutional rights.

82.     Had the District of Columbia properly supervised these officers, the Plaintiff would not have been injured.

## COUNT V
## Conspiracy to deprive Plaintiff of Civil Rights

83.     Paragraphs 1 through 82 are incorporated by reference as if fully set forth and repeated herein.

84.      Officers and officials of the Metropolitan Police Department have conspired to deprive the Plaintiff of his ordinary constitutional rights.

85.     Defendants Scott, Johnson, Christian and yet unidentified members of the Metropolitan Police Department Narcotics Special Investigation Division's Prostitution Unit have made affirmative acts in furtherance of such conspiracy.

86.     The Plaintiff has been directly, proximately and consequently injured as a result of such conspiracy and affirmative acts.

87.     Such unlawful conduct was initiated, facilitated and condoned by persons who are policymakers for the District of Columbia government.

88.     Such unlawful conduct amounted to, and arose from, an official policy and custom of the District of Columbia government intended to inappropriately target vulnerable immigrants for public order offenses.

89.     Such unlawful conduct was physically manifested by Defendants Scott, Johnson, Christian and yet unidentified members of the Metropolitan Police Department Narcotics Special Investigation Division's Prostitution Unit  in furtherance of the official policy and custom of the District of Columbia.

## COUNT VI
## § 1983 Malicious Prosecution

90.     Paragraphs 1 through 89 are incorporated by reference as if fully set forth and repeated herein.

91.     Defendants Scott, Johnson, Christian and yet unidentified officers of the Metropolitan Police Department Narcotics Special Investigation Division's Prostitution Unit  initiated a criminal proceeding against the Plaintiff.

92.     Such officers of the Metropolitan Police Department Narcotics Special Investigation Division's Prostitution Unit knew, or should have known, no probable cause existed to believe the Plaintiff had committed any crime.

93.     Such officers of the Metropolitan Police Department Narcotics Special Investigation Division's Prostitution Unit  instituted the criminal proceeding maliciously.

94.     Such officers of the Metropolitan Police Department Narcotics Special Investigation Division's Prostitution Unit instituted the criminal proceeding to create a false public perception of an affirmative effort by the Department to address the increase in post-Ferguson violent crime in the District of Columbia, a primary purpose other than of bringing an offender to justice.

95.     The Plaintiff was seized and deprived of his liberty following his arraignment.

96.     Such criminal prosecution has terminated in the Plaintiff's favor.

97.     Such criminal prosecution has terminated in the Plaintiff's favor after the Plaintiff demanded strict proof at trial of the false allegations.

98.     Such unlawful conduct was initiated, facilitated and condoned by persons who are policymakers for the District of Columbia government.

99.     Such unlawful conduct amounted to, and arose from, an official policy and custom of the District of Columbia government intended to inappropriately target vulnerable immigrants for public order offenses.

100.    Such unlawful conduct was physically manifested by officers of the Metropolitan Police Department Narcotics Special Investigation Division's Prostitution Unit  in furtherance of the official policy and custom of the District of Columbia.


**COUNT VII**
**Common Law Malicious Prosecution**

101.    Paragraphs 1 through 100 are incorporated by reference as if fully set forth and repeated herein.

102.    Defendants Scott, Johnson, Christian and yet unidentified officers of the Metropolitan Police Department Narcotics Special Investigation Division's Prostitution Unit initiated a criminal proceeding against the Plaintiff.

103.    Such officers of the Metropolitan Police Department Prostitution Unit, or should have known, no probable cause existed to believe the Plaintiff had committed any crime.

104.    Such officers of the Metropolitan Police Department Narcotics Special Investigation Division's Prostitution Unit instituted the criminal proceeding maliciously.

105.     Such officers of the Metropolitan Police Department Narcotics Special

Investigation Division's Prostitution Unit, to create a false public perception of an

affirmative effort by the Department to address the increase in post-Ferguson violent

crime in the District of Columbia, a primary purpose other than of bringing an offender to

justice.

106.     Such unlawful conduct was initiated, facilitated and condoned by persons

who are policymakers for the District of Columbia government.

107.     Such unlawful conduct amounted to, and arose from, an official policy

and custom of the District of Columbia government intended to inappropriately target

vulnerable immigrants for public order offenses.

108.     Such unlawful conduct was physically manifested by officers of the

Metropolitan Police Department Narcotics Special Investigation Division's Prostitution

Unit in furtherance of the official policy and custom of the District of Columbia.


## COUNT VIII
## Abuse of Process

109.     Paragraphs 1 through 108 are incorporated by reference as if fully set

forth and repeated herein.

110.     By arresting the Plaintiff, Defendants Scott, Johnson, Christian and yet

unidentified officers of the Metropolitan Police Department Narcotics Special

Investigation Division's Prostitution Unit made an improper and illegal use of the District

of Columbia's criminal process.

111.     Such officers of the Metropolitan Police Department Narcotics Special

Investigation Division's Prostitution Unit did so with an ulterior motive, to create a false

public perception of an affirmative effort by the Department to address the increase in post-Ferguson violent crime in the District of Columbia.

112.    The Plaintiff was directly, proximately and consequently injured by his arrest and the seizure of his person and property.

113.    Such unlawful conduct was initiated, facilitated and condoned by persons who are policymakers for the District of Columbia government.

114.    Such unlawful conduct amounted to, and arose from, an official policy and custom of the District of Columbia government intended to inappropriately target vulnerable immigrants for public order offenses.

115.    Such unlawful conduct was physically manifested by officers of the Metropolitan Police Department Narcotics Special Investigation Division's Prostitution Unit in furtherance of the official policy and custom of the District of Columbia.

**COUNT IX**
**Injunctive Relief**
**as to the District of Columbia**

116.    Paragraphs 1 through 115 are incorporated by reference as if fully set forth and repeated herein.

117.    The District of Columbia maintains public records of the Plaintiff's arrest.

118.    The District of Columbia's preservation of records of the Plaintiff's arrest in the public domain improperly implies that such arrest was lawful.

119.     Therefore, records of the Plaintiff's arrest as part of the public domain is improper.

120.    The Plaintiff demands the removal of any public record of the Plaintiff's

arrest.

WHEREFORE, the Court should enter an Order granting the Plaintiff damages in an

amount according to proof under applicable law, plus interest at the maximum legal rate,

attorney's fees, punitive damages, and such other and further relief as this Court deems

equitable and just.

## JURY DEMAND

The Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

_____
Matthew August LeFande
Attorney at Law PLLC
4585 North 25th Road
Arlington VA 22207
Tel: (202) 657-5800
Fax: (202) 318-8019
matt@lefande.com
DC Bar # 475995
Attorney for the Plaintiff