UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ALEHEGN MEHARI, | ) | |
| | ) | **FILED** |
| Plaintiff, | ) | JUL 2 8 2017 |
| | ) | |
| v. | ) | Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |
| | ) | |
| THE DISTRICT OF COLUMBIA, NICO ALFREDO SCOTT, BLAKE EDWARD JOHNSON, BRYAN FRANCIS CHRISTIAN, and UNKNOWN OFFICERS OF THE METROPOLITAN POLICE DEPARTMENT, | ) | Civil Case No. 16-1889 (RJL) |
| Defendants. | ) | |

## MEMORANDUM OPINION
(July 27, 2017) [# 14]

Plaintiff, Alehegn Mehari ("Mehari" or "plaintiff"), brings this action alleging that defendants, the District of Columbia ("the District"), Nico Alfredo Scott ("Scott"), Blake Edward Johnson ("Johnson"), Bryan Francis Christian ("Christian"), and Unknown Officers of the Metropolitan Police Department (collectively, "the Officers"), violated his constitutional rights. Specifically, he alleges various violations of his Fourth, Fifth, and Fourteenth Amendment rights, as well as several other claims. This matter is now before the Court on defendants' Motion for Partial Dismissal or Motion for Partial Summary Judgment [Dkt. # 14]. Upon consideration of the parties' submissions, defendants' motion is GRANTED in part and DENIED in part.

1

## BACKGROUND

Plaintiff's complaint paints a picture of an overarching and interconnected scheme on the part of all defendants to deprive immigrants in the District of Columbia of their constitutional rights. The story begins in the early morning of September 24, 2015, when Mehari—an immigrant and non-native English speaker—had just completed his workday as a licensed taxicab driver in the District of Columbia and was returning home to Maryland. *Id.* at ¶¶ 24-29. Mehari alleges that he pulled into a gas station in Northeast D.C. at the end of his shift and went into the store to purchase a lottery ticket. *Id.* at ¶¶ 30-31. When he returned to his cab, an undercover female officer of the Metropolitan Police Department's ("MPD") Prostitution Unit walked up to his cab. *Id.* at ¶¶ 32-33. She approached the window and attempted to speak to him, but Mehari alleges he was confused by her "unfamiliar lingo." Compl. at ¶¶ 34-36. Indeed, he claims that he attempted to drive away from her, but she leaned into the partially opened window to prevent him from leaving. *Id.* at ¶¶ 37-38. It later became clear to Mehari that the officer was soliciting him for sex, and he claims that he told her he was married and tried to leave. *Id.* at ¶ 39. Plaintiff alleges that the officer persisted in soliciting him until he was able to drive away. *Id.* at ¶ 40.

Once plaintiff reached the street, he alleges that he was cut off by two marked police cars with emergency lights flashing. *Id.* at ¶ 42. Mehari claims that several "unidentified uniformed officers with firearms displayed rushed [his] taxicab and removed him from the vehicle." *Id.* at ¶ 43. The officers then arrested him for sexual

2

solicitation. *Id.* at ¶ 44. Mehari claims that the officers then fabricated a false police report in which they stated that plaintiff had accepted the undercover officer's advances and solicited her for prostitution. *Id.* at ¶ 45. Before he was released, Mehari was held in custody for several hours, and his personal possessions were seized from him. *Id.* at ¶¶ 46-47.

On October 7, 2015, the Officers filed a sworn complaint with the U.S. Attorney's Office of the District of Columbia in order to initiate criminal proceedings against Mehari. *Id.* at ¶ 48. As a result, plaintiff claims he was required to appear in court on at least four occasions and was "subjected to burdensome limitations on his freedom as a condition of his pretrial release[,] including drug testing and an obligation, under threat of arrest, to appear at the Pretrial Services Agency." *Id.* at ¶¶ 50-51. Mehari claims he was offered a form of probation as a "diversion" from the United States Attorney, but Mehari refused and demanded a trial. *Id.* at ¶¶ 52-52. On January 4, 2016, the date of Mehari's trial, the prosecution abandoned its case against him. *Id.* at ¶ 54.

Plaintiff claims that he suffered several injuries as a result of his wrongful arrest and detention, including "substantial humiliation and emotional distress." *Id.* at ¶ 56. He also claims that he was denied an apartment application after the rental agency discovered his recent prostitution-related arrest, and he incurred substantial expense in defending against the false criminal charge. *Id.* at ¶¶ 55, 57. Although Mehari attempted to obtain information regarding the identities of the officers involved in his arrest, his Freedom of Information Act ("FOIA") request was unsuccessful. *Id.* at ¶ 58.

3

Plaintiff subsequently filed the instant action on September 21, 2016. In his complaint, Mehari advances the following claims for relief: (1) Fifth Amendment deprivation of his property interest; (2) Fourth Amendment deprivation of his property interest; (3) Deprivation of equal protection of the law; (4) Negligent supervision or retention; (5) Conspiracy to deprive Mehari of his civil rights; (6) § 1983 malicious prosecution; (7) Common law malicious prosecution; (8) Abuse of process; and (9) Injunctive relief. Compl. at ¶¶ 59-120. From the face of plaintiff's complaint, it appears that he alleges Count IV and Count IX against only the District; the seven remaining counts appear to be alleged against all defendants. *See id.*

On December 5, 2016, defendants moved for partial dismissal of the complaint, or in the alternative, partial summary judgment. *See* Def.'s Mot. for Partial Dismissal of the Complaint or in the Alternative for Partial Summ. J. ("Def.'s Mot."). Specifically, they seek dismissal of: (1) Count I as to all defendants for failure to state a violation of the Fifth Amendment; (2) Count IV as to the District for failure to state a claim for negligent supervision or negligent retention; (3) Count V as to all defendants for failure to state a claim for conspiracy; (4) Count VI as to all defendants for failure to state a claim for Section 1983 malicious prosecution; (5) Counts I, II, III, IV and VI as to the District for failure to state a claim for municipal liability for violation of plaintiff's civil rights; (6) Count VII as to all defendants for failure to state a claim for common law malicious prosecution; (7) Count VIII as to all defendants for failure to state a claim for abuse of process; and (8) Count IX as to the District, on the ground that this Court lacks subject matter jurisdiction to grant injunctive relief as to Superior Court records. *See id.* at 1-2.

The District of Columbia also seeks summary judgment as to Counts IV (insofar as it is construed as a common law claim), VII, and VIII, on the ground that plaintiff failed to comply with D.C. Code § 12-309. *See id.* at 2.

## STANDARD OF REVIEW

### A. Motion to Dismiss

To survive defendants' motion for partial dismissal of his claims, Mehari's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 544 (2007). Although a trial court generally must consider a plaintiff's factual allegations as true, the court should first "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Once this Court has satisfied itself that plaintiff has asserted "well-pleaded factual allegations," *id.*, I must determine that the allegations are plausible. That is, Mehari's factual allegations must allow this Court to "draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged," if the factual allegations are proven true. *Matrixx Industries, Inc. v. Siracusano*, 563 U.S. 27, 45-46 (2011).

### B. Motion for Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, this Court should render summary judgment in favor of defendants unless the pleadings, and any attachments to the pleadings, establish a "genuine issue as to any material fact." The moving party bears the initial burden of identifying evidence that demonstrates that there is no genuine issue

5

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant—here, defendants—makes that showing, the burden shifts to plaintiff to "come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unless plaintiff can demonstrate a genuine issue of material fact—which requires him to "cast more than metaphysical doubt" on the evidence—defendants are entitled to judgment as a matter of law. *Doe v. Gates*, 981 F.2d 1316, 1323 (D.C. Cir. 1993).

## ANALYSIS

### A. Count I: Fifth Amendment Violation

In his complaint, Mehari alleges that his property was seized without lawful cause and for an unlawful purpose, and that his property was intentionally damaged or destroyed without due process of law. Compl. at ¶¶ 60-63. He asserts that his property was seized as part of an official policy of the District "intended to target immigrants who were particularly vulnerable to criminal proceedings and less likely to be able to defend themselves." *Id.* at ¶ 66. It is not immediately clear from the face of Mehari's complaint whether he is asserting a violation of procedural due process, substantive due process, or both. But because "a complaint is construed liberally in the plaintiffs' favor, and the Court should grant plaintiffs the benefit of all inferences that can be derived from the facts alleged," I assume for the sake of analysis that plaintiff has alleged a violation of both his procedural *and* substantive due process rights. *Kramer v. United States*, 460 F. Supp. 2d 108, 110 (D.D.C. 2006) (internal quotation marks and alterations omitted).

Defendants argue that plaintiff's allegation of a procedural due process violation should be dismissed because the District provided adequate post-deprivation remedies sufficient to ameliorate any unlawful conduct. Def.'s Mot. at 3. I agree. "[W]here a plaintiff challenges random, unauthorized governmental conduct on the ground that it deprived him or her of liberty *without due process*, the consensus of the circuits is that . . . no cognizable constitutional claim can be stated where adequate post-deprivation state remedies are available." *Crawford v. Parron*, 709 F. Supp. 234, 236-37 (D.D.C. 1986); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("Accordingly, we hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available.").

Here, the fact that plaintiff has alleged various tort claims in his complaint—including negligent supervision or retention, malicious prosecution, and abuse of process, Compl. at ¶¶ 79-82, 101-115—reveals that there are, in fact, adequate post-deprivation remedies available to him. *See Crawford*, 709 F. Supp. at 235 ("Once again, however, because adequate post-deprivation remedies are available to plaintiff—namely *state* tort actions for false imprisonment or false arrest—he has failed to state a claim for relief."). Plaintiff has not alleged that these tort remedies are inadequate to remedy the alleged violation of his rights, and thus he has not stated a claim for a violation of his Fifth Amendment procedural due process rights. *See Hudson*, 468 U.S. at 540.

Although defendants initially moved for dismissal of Mehari's Fifth Amendment claim it its entirety, see Def.'s Mot. at 3-4, in their reply brief, they withdrew their motion as to his substantive due process claim. Def.'s Reply to Pl.'s Opp. to Def.'s Mot. for Partial Dismissal or in the Alternative Partial Summ. J. ("Def.'s Reply") at 1. Accordingly, plaintiff's Fifth Amendment claim is dismissed insofar as it alleges a violation of Mehari's *procedural* due process rights. Mehari's *substantive* due process claim, however, remains.

### B.     Count IV: Negligent Supervision or Negligent Retention

Plaintiff next accuses the District of negligent supervision or negligent retention. But apart from three conclusory sentences in his complaint that track the elements of a negligent supervision cause of action, Mehari alleges no facts to support his claim. *See* Compl. at ¶¶ 79-82. To adequately state a claim for negligent supervision, plaintiff was required to plead that the District "'knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the [District], armed with that actual or constructive knowledge, failed to adequately supervise the employee.'" *Rawlings v. District of Columbia*, 820 F. Supp. 2d 92, 114 (D.D.C. 2011) (quoting *District of Columbia v. Tulin*, 994 A.2d 788, 794 (D.C. 2010)). Unfortunately for plaintiff, he has wholly failed to allege that the District knew or should have known of negligent or dangerous conduct by its police officers. In fact, plaintiff does not allege any *mens rea* on the part of the District whatsoever. Plaintiff's claim for negligent supervision or negligent retention must therefore be dismissed.

## C. Count V: Conspiracy

Count V of plaintiff's complaint alleges that the defendants conspired to violate his constitutional rights. Compl. at ¶ 84. Defendants argue that Mehari's conspiracy claim must be dismissed under the intracorporate conspiracy doctrine, however, because he has failed to identify two parties that are legally capable of engaging in a conspiracy with one another. *See* Def.'s Mot. at 4. Defendants are correct.

The intracorporate conspiracy doctrine holds that "two employees of the same employer cannot conspire with each other or with their employer." *Tabb v. District of Columbia*, 477 F. Supp. 2d 185, 190 (D.D.C. 2007) (citation omitted). Under this doctrine, "a corporation cannot conspire with its employees, and its employees, when acting within the scope of their employment, cannot conspire among themselves." *Id.* This rule is "based on the notion that a corporation and its agents constitute a single legal entity that cannot conspire with itself, just as it is impossible for an individual person to conspire with himself or herself." *Id.* And district courts in this Circuit have consistently applied the intracorporate conspiracy doctrine to Section 1985 conspiracy claims, like the one plaintiff attempts to allege here. *See, e.g., Tafler v. District of Columbia*, 2006 WL 3254491, at *9-10 (D.D.C. 2006); *Brown v. Sim*, Civ. A. No. 03–2655, 2005 WL 3276190, at *3, (D.D.C. Sept. 30, 2005); *Lerner v. District of Columbia*, 362 F. Supp. 2d 149, 165 (D.D.C. 2005) (concluding that the intracorporate conspiracy doctrine did not apply because all of the alleged participants in the conspiracy were not employed by the same entity); *Anyaibe v. Gilbert Sec. Serv.*, Civ. A. No. 94–2377, 1995 WL 322452, at *7

n. 13 (D.D.C. May 16, 1995); *Michelin v. Jenkins*, 704 F. Supp. 1, 4 (D.D.C. 1989); *Gladden v. Barry*, 558 F. Supp. 676, 679 (D.D.C. 1983).

In his opposition, Mehari claims that, in *Kenley v. District of Columbia*, 83 F. Supp. 3d 20 (D.D.C. 2015), this Court "thoroughly and competently rejected [the] intracorporate conspiracy doctrine in a § 1985 claim against the District of Columbia." Pl.'s Opp. to Mot. for Partial Dismissal of the Complaint or in the Alternative for Partial Summ. J. ("Pl.'s Opp.") at 5. But plaintiff plainly misstates the holding of that case.[1] In fact, rather than rejecting the intracorporate conspiracy doctrine in the § 1985 context, the *Kenley* court *explicitly reaffirmed* that the doctrine does, in fact, apply to bar Section 1985 claims. *See Kenley*, 83 F. Supp. 3d at 32 ("[N]umerous district courts in this jurisdiction have applied [the intracorporate-conspiracy doctrine] to bar Section 1985 conspiracy claims against employees of the same government entity."). Indeed, the thrust of the *Kenley* decision was that the intracorporate conspiracy doctrine might not apply to civil conspiracy claims under *Section 1983*; it never called into question the applicability of the doctrine in the Section 1985 context. *Id.*

Here, Mehari clearly asserts his civil conspiracy claim pursuant to Section 1985, rather than Section 1983. *See* Compl. at ¶ 2 ("The Plaintiff further offers causes of action

---

[1] Mehari accuses the Attorney General of violating Rule 11 of the Federal Rules of Civil Procedure by concealing or suppressing relevant authority—namely, the Court's decision in *Kenley v. District of Columbia*, 83 F. Supp. 3d 20 (D.D.C. 2015)—and asserts that such conduct "entirely amounts to attorney misconduct by these representatives of the District of Columbia." Pl.'s Opp. at 8. Plaintiff's accusation that the District has committed sanctionable conduct "is not something the court takes lightly," *Landrith v. Roberts*, 999 F. Supp. 2d 8, 23 (D.D.C. 2013), but alas, plaintiff's allegations are meritless. Indeed, it is plaintiff who misrepresents the holding of *Kenley*. Advocacy of this sort is highly unlikely to inspire the confidence of the Court.

arising under 42 U.S.C. § 1985 for injuries resulting from two or more persons conspiring . . . to deny the Plaintiff the equal protection of the laws."). And he has failed to allege that the defendants in this case were acting outside the scope of their employment when they allegedly violated his rights. *See Tabb*, 477 F. Supp. 2d at 191. Accordingly, the intracorporate conspiracy doctrine applies, and Count V of the complaint is dismissed.

D. **Count VI: Section 1983 Malicious Prosecution**

Defendants next seek dismissal of plaintiff's claim for malicious prosecution under § 1983. In this Circuit, "malicious prosecution is actionable under 42 U.S.C. § 1983 to the extent that the defendant's actions cause the plaintiff to be unreasonably 'seized' without probable cause, in violation of the Fourth Amendment." *Pitt v. District of Columbia*, 491 F.3d 494, 511 (D.C. Cir. 2007). An underlying Fourth Amendment violation is therefore a prerequisite for a malicious prosecution claim under § 1983. *Id.* Defendants argue that a plaintiff must allege "that he was held in custody *subsequent* to the initiation of the criminal prosecution against him" in order to state a claim for malicious prosecution. Def's Mot. at 6 (emphasis added). A review of the law in the several circuits who have addressed this issue reveals that defendants are correct. *See, e.g., Singer v. Fulton County Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995) ("[T]o successfully pursue a § 1983 claim of malicious prosecution in violation of his Fourth Amendment rights, [plaintiff] must show some post-arraignment deprivation of liberty that rises to the level of a constitutional violation."); *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 4 (1st Cir. 1995) ("Damages for false arrest are restricted to the time period between the initial detention and the issuance of legal process, whereas the tort of malicious

11

prosecution contemplates general damages as well as compensation for any arrest and imprisonment preceding the termination of the criminal proceeding."); *Torres v. McLaughlin*, 163 F.3d 169, 177 (3d Cir. 1998) (holding that, in a malicious prosecution case, "the required seizure is likely to occur post-arraignment"). Plaintiff therefore must allege a post-arraignment deprivation of his liberty to state a claim for malicious prosecution under Section 1983.

To support his Fourth Amendment claim, Mehari alleges that he "was held in custody against his will for several hours," Compl. at ¶ 46, and that he "was seized and deprived of his liberty following his arraignment." *Id.* at ¶ 95. He also alleges that he "had to appear in court on at least four occasions" and "was subjected to burdensome limitations on his freedom as a condition of his pretrial release[,] including drug testing and an obligation, under threat of arrest, to appear at the Pretrial Services Agency." Compl. at ¶¶ 50-51. Defendants argue that being restricted by pretrial conditions and being compelled to appear in court do not constitute a seizure in the context of the Fourth Amendment. Def.'s Reply at 3. But this Court has treated such allegations as sufficient for the purpose of stating a Fourth Amendment violation in the past. *See, e.g., Thorp v. District of Columbia*, 142 F. Supp. 3d 132, 145-46 (D.D.C. 2015) ("Plaintiff alleges that he was subjected to burdensome and humiliating conditions of pre-trial release which included drug testing and weekly interviews with court officials." (internal quotation marks omitted)). And several circuits have held that certain onerous pre-trial restrictions may constitute a seizure for Fourth Amendment purposes. *See, e.g., Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997) ("In sum, while a state has the undoubted authority, in

connection with a criminal proceeding, to restrict a properly accused citizen's constitutional right to travel outside of the state as a condition of his pretrial release, and may order him to make periodic court appearances, such conditions are appropriately viewed as seizures within the meaning of the Fourth Amendment."); *Evans v. Ball*, 168 F.3d 856, 861 (5th Cir. 1999) (holding that a summons, combined with pretrial restrictions that prohibited plaintiff from travelling outside the state and required him to disclose his financial information, constituted a seizure under the Fourth Amendment), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003). Plaintiff, therefore, has pleaded a colorable Fourth Amendment violation underlying his § 1983 claim.

Unfortunately for plaintiff, however, his claim for malicious prosecution under § 1983 still fails. Although defendants do not so argue, this Court notes that the weight of authority suggests that a plaintiff must show a favorable termination of the proceedings instituted against him in order to state a claim for § 1983 malicious prosecution. *See, e.g., Thorp*, 142 F. Supp. 3d at 146-47 ("[T]he Court will follow those circuits requiring a showing of favorable termination for a § 1983 malicious-prosecution claim."); *Murphy*, 118 F.3d at 943 ("[I]n order to succeed on a malicious prosecution claim under § 1983, [plaintiff] was required to prove . . . the termination of that proceeding in favor of the plaintiff." (internal quotation marks omitted)); *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (holding that plaintiff's "fail[ure] to establish . . . the favorable termination of his underlying criminal proceeding—was fatal to his claims" of malicious prosecution under § 1983); *Brooks v. City of Winston–Salem, N.C.*,

85 F.3d 178, 183-84 (4th Cir. 1996) ("[A plaintiff's] allegations that [the defendant] seized him pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor are sufficient to state a § 1983 malicious prosecution claim alleging a seizure that was violative of the Fourth Amendment."). Mehari has not satisfied this pleading requirement here.

Although Mehari summarily asserts in his complaint that the proceedings filed against him in Superior Court "terminated in the Plaintiff's favor," Compl. at ¶ 97, this conclusory allegation is not enough. A review of the Superior Court docket[2] reveals that Mehari's case was dismissed without prejudice. *See* Def.'s Mot., Ex. 2 ("Superior Court Docket"). And plaintiff concedes that his prosecution was "abandoned" prior to trial. Compl. at ¶ 54. The law is clear that a termination of a criminal prosecution will only be deemed favorable where the termination "reflect[s] on the merits of the underlying action." *Lucas v. District of Columbia*, 505 F. Supp. 2d 122, 127 (D.D.C. 2007). Although abandonment of a criminal case "has been held to be a favorable termination where the facts of the case indicate that such a disposition reflects on the innocence of the defendant in the underlying suit," *id.*, Mehari has not "identified facts surrounding the dismissal without prejudice that . . . would demonstrate that the termination of the criminal case tended to show [his] innocence." *Clark v. District of Columbia*, Civ. A. No. 16-385 (CKK), 2017 WL 1011418, at *7 (D.D.C. Mar. 14, 2017); *see also O'Quinn*

---

[2] This Court may take judicial notice of the D.C. Superior Court docket without converting defendants' motion to dismiss into one for summary judgment as to this claim. *See Lewis v. Parker*, 67 F. Supp. 3d 189, 195 n.6 (D.D.C. 2014); *Kenley*, 83 F. Supp. 3d at 43.

*v. District of Columbia*, No. CIV.A. 87-0074(RLC), 1988 WL 23244, at *2 (D.D.C. Mar. 4, 1988) ("Moreover, prosecutors will ordinarily have a whole mix of reasons [to voluntarily dismiss a case], which may well include the strength of the evidence in the case. But where prosecutors have not stated their reasons, there is really no way for this Court to conclude that these were favorable terminations."); *Thorp*, 142 F. Supp. 3d at 145 (holding that the bare assertion that a dismissal without prejudice was "favorable" to the plaintiff was insufficient to survive a motion to dismiss).

Here, Mehari has not alleged that the circumstances of the dismissal of his criminal charges demonstrate his innocence. His claim for malicious prosecution under § 1983 is accordingly dismissed.

### E. Counts I, II, III, IV, and VI: Municipal liability

The District seeks dismissal of Counts I-IV and Count XI on the ground that Mehari has failed to adequately plead these Section 1983 claims. Mehari seemingly alleges most of these claims against all defendants, including the District, but the District insists that plaintiff has not sufficiently pleaded municipal liability. Because I have already ruled that Mehari has failed to state a claim against all defendants—including the District—for negligent supervision or retention (Count IV) and malicious prosecution (Count VI), I do not address the District's arguments with respect to these claims. The only question remaining, therefore, is whether Mehari has properly pleaded municipal liability for Counts I-III. Unfortunately for plaintiff, I find that he has not.

Although a municipality is a "person" for purposes of § 1983, *Best v. District of Columbia*, 743 F. Supp. 44, 46 (D.D.C. 1990), "a municipality can be found liable under

15

§ 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Crucially, "*respondeat superior* or vicarious liability will not attach under § 1983." *Id.* Thus, a plaintiff seeking to hold a municipality liable for alleged constitutional violations must demonstrate that a municipal custom or policy caused the constitutional harm. *See Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004). Mehari, therefore, "must show not only a violation of his rights under the Constitution or federal law, but also that the [District's] custom or policy caused the violation." *Feirson v. District of Columbia*, 506 F.3d 1063, 1066 (D.C. Cir. 2007) (internal quotation marks omitted).

The District contends that it cannot be held liable because plaintiff has done nothing more than "describe[] in generalities a governmental conspiracy without identifying a specific policy/practice and/or a specific policymaker." Def.'s Reply at 4. Indeed, Mehari paints a colorful story in his complaint, claiming that, "[f]ollowing events in Ferguson, Missouri in August 2014 and Baltimore, Maryland in April 2015, major cities in the United States including the District of Columbia experienced a significant upswing in violent crime." Compl. at ¶ 15. According to plaintiff, police agencies in these cities, including the MPD, "were criticized in the media for a lack of enforcement action to meet the increase in violent crime." *Id.* at ¶ 16. Because of the "intense pressure to address [] violent crime through an increase in police activities" and to "reverse a claimed increase in police violence toward black African Americans," the MPD "intentionally targeted enforcement of public order offenses against groups of immigrants with limited English speaking skills." *Id.* at ¶¶ 18-20.

While creative, plaintiff's allegations of the District's unconstitutional conspiracy ultimately fails to satisfy his burden of pleading. The law is clear that "[p]roof of a single incident of unconstitutional activity is insufficient to impose liability unless there was proof that there was a policy in place that was unconstitutional." *Sanders v. District of Columbia*, 522 F. Supp. 2d 83, 88 (D.D.C. 2007). Despite his allegations that the MPD, U.S. Attorney's Office, and D.C. Superior Court conspired to "target[] immigrants with limited communication skills," Mehari has not pointed to any other examples of the MPD arresting an immigrant during the relevant time period and "compelling" that immigrant to plead guilty to a public order offense. Compl. at ¶¶ 21-22. "The policy or custom must be pervasive to support municipal liability," *Sanders*, 522 F. Supp. 2d at 88, and the one incident of unconstitutional behavior plaintiff alleges here is plainly insufficient to qualify as pervasive. Counts I, II, and III are accordingly dismissed with respect to the District of Columbia.

### F. Count VII: Common Law Malicious Prosecution

Mehari next asserts a claim for common law malicious prosecution. Compl. at ¶¶ 101-108. To state a claim under the common law, Mehari must show: "(a) a criminal proceeding *instituted or continued* by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) [m]alice, or a primary purpose in instituting the proceeding other than that of bringing an offender to justice." *Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 992 (D.C. Cir. 2014) (internal quotation marks and citation omitted). Unfortunately for

plaintiff, his common law claim suffers from the same defect as his claim under § 1983: he has failed to adequately allege a favorable termination.

As noted above in my analysis of Mehari's § 1983 malicious prosecution claim, a plaintiff must normally show dismissal of the criminal proceedings against him with prejudice to satisfy the "favorable termination" requirement. *See Kenley*, 83 F. Supp. 3d at 42 (dismissing common law malicious prosecution claim because of "[plaintiff's] failure to allege that the [criminal] charges were dismissed *with* prejudice"). Not only does Mehari fail to allege that his prosecution was dismissed with prejudice, but also he provides no details regarding the circumstances of the dismissal. His bare allegation that the termination was favorable, Compl. at ¶ 96, is simply not enough. *See Twombly*, 550 U.S. at 555. Mehari's common law malicious prosecution claim is accordingly dismissed.

### G. Count VIII: Abuse of Process

In Count VIII of his complaint, Mehari asserts a claim for abuse of process against all defendants. Specifically, he alleges that defendants instituted criminal process against him "with an ulterior motive, to create a false public perception of an affirmative effort by the Department to address the increase in post-Ferguson violent crime in the District of Columbia." Compl. at ¶ 111. As defendants point out, however, allegations of an ulterior motive are plainly insufficient to support a claim of abuse of process. Def.'s Mot. at 11.

To survive defendants' motion to dismiss, Mehari was required to allege that the defendants used the legal system "to accomplish some end which is without the regular

18

purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992). Critically, "there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." Restatement (Second) of Torts § 682 cmt. b (1977). Unfortunately for plaintiff, spite and ulterior purpose are the only allegations he makes to support his abuse of process claim. He does not allege that defendants sought a "collateral thing which [Mehari] could not legally and regularly be required to do." *Scott v. District of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1996). Rather, here, as in *Scott*, plaintiff alleges that "the officers instituted the criminal charge for precisely the purpose for which it was intended: establishing that [Mehari] was guilty of a criminal offense. [Mehari] does not contend that the filing of criminal charges was intended to pressure him into taking any action or prevent him from taking action, or to achieve any other collateral purpose." *Id.* at 756. Even accepting as true plaintiff's theory that the defendants conspired in order to effect more arrests, they still would have used the legal system for its intended purpose: to convict Mehari of the charges against him. Plaintiff's claim for abuse of process is accordingly dismissed.

## H. Count IX: Injunctive Relief

Finally, Mehari seeks "injunctive relief," more properly described as a request to seal the public record of his arrest. Compl. at ¶¶ 116-120. Defendants oppose this request, arguing that this Court should not compel the Superior Court to act under these circumstances. Def.'s Mot. at 15. Defendants are correct.

19

D.C. Code § 16-802 provides a process for any person arrested for the commission of an offense punishable by the District of Columbia Code, "whose prosecution has been terminated without conviction," to "file a motion with the Clerk at any time to seal all of the records of arrest and related court proceedings." Plaintiff has alleged neither that he has made a motion pursuant to § 16-802, nor that such a motion was unsuccessful. Therefore, because plaintiff has not alleged that the local remedy is "inadequate or ineffective," this Court will not compel the Superior Court to act. *Byrd v. Henderson*, 119 F.3d 34, 37 (D.C. Cir. 1997). Plaintiff's request for injunctive relief is accordingly denied.[3]

## CONCLUSION

For the foregoing reasons, defendant's Motion for Partial Dismissal is GRANTED in part and DENIED in part. Counts I-IX are DISMISSED with prejudice as to the District of Columbia. Counts IV-IX are DISMISSED with prejudice as to all other defendants. To the extent that Count I states a violation of plaintiff's *substantive* due process rights, the Officers' Motion for Partial Dismissal of that claim is DENIED. A separate Order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge

---

[3] As an alternative to its arguments for dismissal, discussed above, the District seeks summary judgment on Counts IX, VII, and VIII on the ground that plaintiff failed to comply with the notice requirement of D.C. Code § 12-309, which requires a plaintiff to provide notice to the District before pursuing any action for unliquidated damages against it. Because I have already ruled that Counts IX, VII, and VIII be dismissed against all defendants—including the District—I need not, and do not, address this alternative argument.